IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

KENNETH JACOBS, Co-Executor of the Estate
and Acting on Behalf of the Wrongful Death
Beneficiaries of Wilma Johnson, Deceased AND
MARY ANNE COX, Co-Executor of the Estate
of Wilma Johnson,                                                                PLAINTIFFS,

VS.                                                CIVIL ACTION NO. 2:10CV154-P-S

CITY OF HORN LAKE, MISSISSIPPI;
DOMINIQUE BROWN, Individually and
in Her Official Capacity;
NATHAN RYAN, Individually and in His
Official Capacity; and
MARION SEAWRIGHT, Individually and
in His Official Capacity,                                                        DEFENDANTS.

**MEMORANDUM OPINION**

This matter comes before the court upon Defendants Dominique Brown, Nathan Ryan, and Marion Seawright's motion for summary judgment and for qualified immunity [docket number 71]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

**I. FACTUAL BACKGROUND**

On Tuesday morning, September 15, 2009, at around 3:00 a.m., Officers Dominique Brown, Nathan Ryan, and Marion Seawright of the Horn Lake Police Department responded to a disturbance call at residence of Wilma Johnson. When they arrived, Wilma Johnson was standing in her driveway and complained that her live-in boyfriend Troney Johnson would not give her her car keys. She went inside to get Troney Johnson who came out and told the officers that she was mad because he was late picking her up from work and that she called the police on him all the time. The officers aver that Wilma Johnson stated she was tired of Troney Johnson spending her money and that she

1

wanted him to move out after eight years of being together. The officers aver that when they asked Troney Johnson if he had somewhere else he had to go, and after he tried several times to contact someone unsuccessfully over the phone, Wilma Johnson conceded that Troney Johnson could stay at the residence and would not need to leave until he returned from computer classes later that day. She also stated that she would drive him to class.

During the call, the officers determined from dispatch that there was an outstanding contempt warrant for Troney Johnson. They attempted to locate the original copy from dispatch but were unsuccessful. Troney Johnson and Wilma Johnson both advised that the warrant and fine had been taken care of on a previous occasion.

According to the officers' reports, neither Wilma Johnson nor Troney Johnson exhibited any signs of violence or injury and they both appeared calm.

On September 19, 2009, some four days after the disturbance call, the Horn Lake Police Department received a report that Wilma Johnson had been shot to death at her home. According to the report of Detective Larry Calvert, Chelsea Monique Dooley, a neighbor witness, said she last saw Wilma Johnson on Wednesday, September 16, 2009 at around 4:00 p.m. standing in her front yard talking on her cell phone. Ms. Dooley also stated that she heard Wilma Johnson and Troney Johnson arguing on Thursday, September 17, 2009 at approximately 1:00 a.m.

It was later determined by the Certified Autopsy Report that Wilma Johnson had been shot to death on Thursday, September 17, 2009.

On September 10, 2010 two of Wilma Johnson's relatives filed the instant suit.

Against the officers and Horn Lake, the plaintiffs assert violation of Wilma Johnson's 14th Amendment Substantive Due Process and Personal Security rights and violation of the Mississippi

Tort Claims Act for recklessly disregarding the danger posed to Wilma Johnson by Troney Johnson during the September 15, 2009 disturbance call and for failing to arrest Troney Johnson on the outstanding contempt warrant. Essentially, the plaintiffs argue that but for the officers' failure to arrest Troney Johnson during the September 15, 2009 contempt warrant, he would not have killed Wilma Johnson on or about September 19, 2009.

Against Ben Skinner and All-Star Security, for whom Troney Johnson worked, the plaintiff alleges negligent entrustment, negligence, and negligent hiring and/or retention alleging that the company should have known that Troney Johnson was a convicted felon who did not have the right to possess a firearm. In that regard, the plaintiffs also allege negligence per se for Ben Skinner and All-Star Security's hiring of Troney Johnson who did not have a permit to be an armed security guard as required by Section 97-37-7 of the Mississippi Code. Essentially, with regard to Troney Johnson's employer, the plaintiffs argue that but for the company's entrustment of a firearm to their employee Troney Johnson, he would not have had a firearm shoot Wilma Johnson.

Against Troney Johnson, the plaintiffs allege claims of assault, battery, intentional infliction of emotional distress, and wrongful death.

The defendant officers filed the instant motion for summary judgment arguing that the plaintiff's state-law claims should be dismissed under the Mississippi Tort Claims Act's reckless disregard exception and the federal claims should be dismissed pursuant to the doctrine of qualified immunity.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection*

*Systems*, 669 F.2d l026, l031 (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 991 (5th Cir. l981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l213 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. State-law Claims**

As stated above, the plaintiffs allege that the defendant officers are liable for the death of Wilma Johnson and are not immune under the Mississippi Tort Claims Act because, as governmental employees, they "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury," Miss. Code Ann. §11-46-9(1), by not arresting Troney Johnson on the September 15, 2009 domestic disturbance call on the outstanding warrant.

5

"'Reckless disregard' embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So.2d 226, 230 (Miss. 1999). Reckless disregard is "a higher standard than gross negligence by which to judge the conduct of officers." *Id*.

The plaintiffs argue that the officers in this case acted in reckless disregard for failure to arrest Troney Johnson during the September 15, 2009 disturbance call after determining there was an outstanding warrant for his arrest for contempt of court. However, the plaintiffs do not dispute that the officers attempted to obtain a hard copy of the warrant to verify the contempt warrant was still active, nor do they dispute the officers' contention that the circumstances during that call did not present probable cause to arrest Troney Johnson for any behavior related to the call itself. The plaintiffs argue simply that if the officers had arrested him on the outstanding warrant unrelated to that particular call, he would not have shot Wilma Johnson a couple of days later.

Considering these circumstances in light of the rulings in *Davis v. City of Clarksdale*, 18 So.2d 246 (Miss. 2009) (no reckless disregard when officer merely drove by a house with his spotlight on after a hang-up 911 call instead of further investigation and it was later revealed the caller had been killed inside the house that night); *City of Laurel v. Williams*, 21 So.2d 1170 (Miss. 2009) (no reckless disregard when officers did not arrest Kenneth Wilson when dispatched to two separate disturbance calls involving him and his girlfriend Lisa Williams and Wilson later murdered her); and *Fair v. Town of Friars Point*, 930 So.2d 467) (Miss. Ct. App. 2006) (no reckless disregard when the city failed to inform municipal judge of a boyfriend's prior aggravated assault conviction at sentencing on a simple assault charge and boyfriend killed victim soon after his release), the court concludes that even after viewing the facts in a light more favorable to the plaintiffs, the plaintiffs

6

claims under the MTCA must fail as a matter of law for failure to create a genuine issue of material fact regarding reckless disregard.

**C. Federal Claims**

**1. State-created danger theory**

The plaintiffs argue that a state-created danger occurred when the three officers arrived at the scene in response in response to a 911 call "immediately following Troney Johnson having struck the Decedent, having knocked her out and falling limp to the ground and having dragged her by the leg into the garage." However, the plaintiffs' description of the events in their response are inconsistent and fail to distinguish between the September 15, 2009 disturbance call and the murder two days later on September 17, 2009. In other words, the alleged reports of physical violence occurred on the night of September 17, 2009, not during the subject disturbance call on September 15, 2009. There is no allegation or evidence that the officers had been told Wilma Johnson and Troney Johnson had exchanged physical blows on September 15, 2009. Accordingly, the court concludes that the plaintiffs fail to allege facts that would support a state-created danger claim.

In any event, the plaintiffs have not established that such a theory is recognized in the Fifth Circuit. Indeed, the Fifth Circuit has "never explicitly adopted the [state-created danger] theory." *Does ex rel. Magee v. Covington County Sch. Dist. ex rel. Bd. of Educ.*, 649 F.3d 335, 365 (5th Cir. 2011); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("The Fifth Circuit has not adopted the 'state-created danger' theory of liability.").

**2. Qualified immunity**

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a

person or entity acting under color of state law. 42 U.S.C. § 1983.

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

When "evaluating § 1983 claims based on allegedly unconstitutional conduct by state actors [courts] should conduct a two-prong inquiry to determine whether the state actors are entitled to qualified immunity. 'The first inquiry must be whether a constitutional right would have been violated on the facts alleged.' 'If a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.' Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon*, 305 F.3d at 322-323 (citing *Siegert v. Gilley*, 500 U.S. 226, 232-34 (1991); *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).

Qualified immunity is an "*immunity from suit* rather than a mere defense to liability." *Michell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, "the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery ... as [i]nquiries of this kind can be peculiarly disruptive of effective government." *McClendon*, 305 F.3d at 323 (internal citations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)). Therefore, "adjudication of qualified immunity claims should occur 'at the earliest possible stage in litigation.'" *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

At a stage earlier than summary judgment, "it is the defendant's conduct as alleged in the

complaint that is scrutinized for 'objective reasonableness.' On summary judgment, however, the plaintiff can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

In cases involving police officers, "[t]he [officers'] acts are held to be objectively reasonable unless *all* reasonable officials in the [officers'] circumstances would have then known that the [officers'] conduct violated" the plaintiff's constitutional rights." *Thompson v. Upshur County, Tx*, 245 F.3d 447, 457 (5th Cir. 2001) () (emphasis in original). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *White v Taylor*, 959 F.2d 539 (5th Cir. 1992).

The plaintiffs have not demonstrated that all reasonable police officers in the shoes of the defendant officers would have believed the officers' behavior in this case – *i.e.*, not arresting Troney Johnson during a September 15, 2009 disturbance call because (a) the status of an unrelated outstanding contempt warrant could not be determined; and (b) all three officers aver that there was no probable cause to arrest Troney for behavior alleged or witnessed during the call itself – violated Wilma Johnson's 14th Amendment rights to substantive due process and personal security.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendants Dominique Brown, Nathan Ryan, and Marion Seawright's motion for summary judgment and for qualified immunity [docket number 71] should be granted and all of the plaintiffs' claims against them should be dismissed with prejudice. Since the plaintiffs' other claims against All-Star Security Services, Inc. and Ben Skinner were dismissed on a prior occasion, a Final Judgment shall issue forthwith,

**THIS DAY** of January 5, 2012.

                                        /s/ W. Allen Pepper, Jr.
                                        W. ALLEN PEPPER, JR.
                                        UNITED STATES DISTRICT JUDGE